**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

04 AUG 10 PM 12: 55
U.S. D.
N.D. OF

| | |
|---|---|
| **HOLLIS B. BARRON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **CIVIL ACTION NO.: CV 03-P-0156-S** |
| | ) |
| **FEDERAL RESERVE BANK** | ) |
| **OF ATLANTA,** | ) |
| | ) |
| **Defendant.** | ) |

**ENTERED
AUG 1 0 2004**

## MEMORANDUM OPINION

The court has before it Defendant's Motion for Summary Judgment, (Doc. # 5); Plaintiff's Motion to Strike Declaration of Dennis R. Blass (Doc. # 14); Plaintiff's Motion to Strike Declaration of Andre Anderson (Doc. # 15); Defendant's Motion to Strike Evidence Submitted Under Tab 25 of Plaintiff's Evidentiary Submission (Doc. # 20); Defendant's Motion to Strike Portions of Clauzell Williams' Declaration (Doc. # 21); Defendant's Motion to Strike Declaration of Latoya Smith (Doc. #22); Defendant' Motion to Strike Portions of Declaration of Kineshia Collins (Doc. # 23); and Defendant's Motion to Strike Portions of the Plaintiff's Declaration (Doc. # 24). The above-referenced motions have been fully briefed and were taken under submission, without oral argument, as of July 30, 2004. (Doc. # 36).

Plaintiff Hollis B. Barron ("Barron") commenced this action by filing a complaint on January 17, 2002, alleging that the Federal Reserve Bank of Atlanta (the "Bank") discriminated against him because of his race (African-American) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), and 42 U.S.C. §1981 ("Section 1981"). For the reasons outlined below, Defendant's Motion for Summary Judgment is due to be granted because there



are no disputed issues of material fact and Defendant has demonstrated that it is entitled to judgment as a matter of law. The court finds that all of the pending motions to strike are due to be denied.

## I.    Legal Standards for Evaluating a Summary Judgment Motion

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 113 S. Ct. 2742, 2747-48 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 93 S. Ct. 1817 (1973); *Texas Dept. of Community Affairs v. Burdine*, 101 S. Ct. 1089 (1981), as modified by *Desert Palace v. Costa*, 123 S. Ct. 2148 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a prima facie case of discrimination. Second, once the plaintiff proves a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by

2

the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 93 S. Ct. at 1824-25; *Burdine*, 101 S. Ct. at 1093-94; *Desert Palace*, 123 S. Ct. at 2154-55.

## II.    Motions to Strike

Both Plaintiff and Defendant have filed motions to strike evidence submitted by the opposing party. The court has reviewed Defendant's motions to strike and will assume, without deciding, for the purposes of summary judgment only, that Defendant's motions are due to be denied and that the evidence sought to be stricken is properly considered by the court in its summary judgment analysis.

With respect to Plaintiff's motions, the court finds that they are without merit and due to be denied. Plaintiff argues that the declarations of Andre Anderson and Dennis Blass (Docs. # 14, 15) should be stricken because Defendant failed to comply with the initial disclosure requirements of Fed. R. Civ. P. 26(a)(1) requiring disclosure of individuals "likely to have discoverable information that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A). Plaintiff's argument is meritless.

First, the court notes that the scheduling order in this case specifically provides that **Local Rule 26.1(a)(1)** - not Fed. R. Civ. P. 26(a)(1) - governs the parties' initial disclosures in this case. *Drake, et. al. v. Federal Reserve Bank*, CV-2002-J-146-S, Doc. # 8 (April 12, 2002).[1]    Local Rule 26.1(a)(1)(A) only requires disclosure of  individuals "believed by it to have discoverable non-

---

[1] This case was originally part of a six-plaintiff case before The Honorable Inge P. Johnson. Although the case was eventually severed into six cases and redistributed among other members of this court, the scheduling order entered by Judge Johnson still governs this action.

privileged personal knowledge **concerning any significant factual issue specifically raised in the pleadings**." Loc. R. 26.1(a)(1)(A) (emphasis added). Plaintiff's complaint in this case is the type of "quintessential 'shotgun' pleading" which has long been criticized by the Eleventh Circuit. *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).[2] Given the dearth of facts pled with specificity in Plaintiff's complaint, the court is astonished that Defendant was able to disclose *any* individuals with discoverable knowledge under the Local Rule 26.1(a)(1)(A) standard.

Second, the court notes that there is no dispute that Defendant *did disclose* Anderson and Blass to Plaintiff as part of its initial disclosures; Defendant merely failed to provide Plaintiff with contact information and the subject area of their knowledge. That Plaintiff was not provided contact information for these individuals is of no moment. Both Blass and Anderson are managing agents of the Bank and Plaintiff is prohibited from contacting them outside of the presence of counsel.[3] *See* Rule 4.2 comment. If Plaintiff desired to question these individuals, he needed only to telephone the Bank's counsel. The court finds that, for both of these reasons, Plaintiff's motions to strike are due to be denied.

---

[2] The approximately 90-paragraph complaint contains only three dates related to Barron's claims, all of which fall outside the applicable statutes of limitations. (Doc. # 1).

[3] That aside, Blass was Plaintiff's supervisor and Anderson was the Branch Manager in Plaintiff's location. The court finds it difficult to believe that Plaintiff did not know how to contact these individuals with whom he worked.

III.    **Relevant Undisputed Facts[4]**

A.    **The Bank**

Plaintiff was employed at the Bank location in Birmingham.  Together with other Reserve Banks in various locations throughout the Southeast, the Birmingham Branch provides cash to banks and other depository institutions and processes and clears millions of checks every day.  (Anderson Dec. ¶ 1).  From July 1997 through the end of 2001, Andre Anderson, who is African-American, was the Branch Manager, the highest ranking officer in Birmingham.  (Anderson Dec. ¶ 2).

The Bank typically reviews an employee's performance annually and each review is administered according to the Bank's Appraisal of Employee Performance Policy.  (Anderson Dec. ¶ 9, Ex. 5; *see, e.g.,* Barron Dep. Exs. 3-5, 7-13).   With respect to training opportunities, the Bank provides on-the-job training, formal and informal Branch training, District and System training, external training, and tuition reimbursement programs.  (Anderson Dec. ¶ 10).

Two types of promotions are possible at the Bank: career progression promotions and promotions to vacant positions.  (Anderson Dec. ¶ 5, Ex. 2).  A "career progression" promotion recognizes the employee's promotion to the next level of responsibility in his "job family" and the decision is based on the Bank's needs in addition to the employee's sustained performance, skills, and development. (Anderson Dec. ¶ 5; Fullerton Dep. 244-45).  On the other hand, a "vacant position" promotion occurs only when the Bank has a vacancy and the Bank may post the position if appropriate under Bank policy. (Anderson Dec. ¶ 5, Ex. 2).  In both types of promotions, the specific department

---

[4] If facts are in dispute, they are stated in the manner most favorable to the Plaintiff. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir. 1993).  However, the court notes that Plaintiff's Brief in Opposition to Summary Judgment offers very few facts in addition to those offered by Defendant, although Plaintiff's "Factual Summary" contains many conclusory arguments taken from his declaration that are not appropriately considered "undisputed facts." (*See* Doc. # 35).

of the Bank makes a recommendation for promotion to the Personnel Committee, which is comprised of the Birmingham Branch Officers. (*Id.*).

An employee's compensation is determined by his salary grade classification. (Anderson Dec. ¶ 6, Ex. 3). The Bank uses a "Job Evaluation Program" to determine the relative difficulty and value of different jobs at the Bank and to assign the appropriate salary grade to each job. (Anderson Dec. ¶ 7, Ex. 4). From July 1997 through December 2001, an individual employee's rate of compensation was determined by considering that employee's performance and relative position within the salary range for that employee's grade. (*Id.*)

### B.    Plaintiff's Employment

In 1989, the Bank hired Plaintiff as a management intern, an entry-level management position with advancement opportunity. (Anderson Dec. ¶ 11; Barron Dep. 105).[5] Barron was promoted in 1990 to Supervisor, working first in the Check Collection Department ("Check Collection"), and then in the Cash Services Department ("Cash Services"). (Anderson Dec. ¶ 13).

While employed as manager of Check Collection, Barron was supervised by six individuals. (Barron Decl. ¶ 5). Barron's immediate supervisor for the majority of his tenure in that department was Bobby Pinson (white). (Barron Decl. ¶ 7). During Barron's tenure in Check Collection, he filed a formal grievance against the Bank with the EEO office. (Barron Decl. ¶ 21).[6] Plaintiff claims that he

---

[5] Prior to starting his employment with the Bank, Plaintiff served on active duty in the United States Army until he was honorably discharged. (Barron Dep. 52-53). Plaintiff then began serving on reserve duty in Tuscaloosa, Alabama. (*Id.*) In 1989, Barron graduated from the University of Alabama with a degree in Corporate Finance and Portfolio Management. (*Id.*, at 44; Barron Decl. ¶ 3). Barron also has taken courses in the Banking Industry. (Barron Decl. ¶ 3; Barron Dep. 45).

[6] Barron alleges that the Bank took adverse action against Barron including involuntarily transferring Barron on or about 1995 to the less prestigious Cash Department where Barron would eventually receive two consecutive "Below Requirements" ratings. (Barron Decl. ¶ 24; Barron Dep. 165). Any claim based on these alleged actions is clearly time-barred.

"was forced to discuss" his grievance with Andre Anderson, whom Plaintiff believed to be partial and unresponsive. (Barron Decl. ¶¶ 22, 23).

In 1995, during Plaintiff's time in Cash Services, he earned two consecutive "Below Requirements" ratings which could have resulted in his discharge. (Anderson Dec. ¶ 13; Barron Dep. 225-26). Instead, Barron requested and received a transfer to the Protection Department ("Protection") in September 1995. (Anderson Dec. ¶ 13, Ex. 6; Barron Dep. 139-43, Exs. 4-6).[7] By written memorandum to the Personnel Committee on August 15, 1995, Plaintiff agreed to a reduction in salary and job grade in order to transfer into Protection because he felt Protection was better suited to his skill set than Operations. (Anderson Dec. ¶ 13, Ex. 6; Barron Dep. 139-42, 146, Ex. 6). Plaintiff now claims that the Bank told him that he would be laterally transferred into the Grade 28 Lieutenant position in Protection but instead demoted him to the Grade 26 Sergeant position in Protection. (Barron Decl. ¶ 31; Barron Dep. 144).

### 1.    Performance Reviews

Between 1989 and 2002, Plaintiff received 15 performance ratings. (Barron Dep. Exs. 3-5, 7-14). He received two "Below Requirements" ratings in September 1989 and February 1990, respectively. (Anderson Dec. ¶ 12; Barron Dep. Exs. 3, 7-11, 13-14). From late 1990 until 1995, each of Barron's ratings was "Meets Requirements." (Anderson Dec. ¶ 12; Barron Dep. Exs. 3, 7-11, 13-14). In 1995 while Plaintiff worked in Cash Services, he again earned two "Below Requirements." (Barron Dep. Exs. 4, 5). After his transfer to Protection, Plaintiff received "Meets Requirements" ratings on every rating except his rating in 2000, on which he earned "Exceeds Requirements." (Barron Dep. Ex. 12). On his "Below Requirements" performance reviews, Plaintiff's supervisors noted his

---

[7] Protection provides security to the Bank's facilities, operations and personnel. (Doc. # 6, Ex. D, Anderson Decl. ¶ 13)

difficulty completing projects in a timely manner, poor interpersonal skills, rigidity, unwillingness to accept constructive criticism, his poor work flow and management decisions, penchant for writing unnecessarily detailed reports, and overall lack of supervisory skills. (Anderson Dec. ¶ 12, 16; Blass Dec. ¶ 2; Barron Dep. 263, 266, Exs. 3-5; LaRue Dep. 82-83, 88; Wright Dep. 145, 147). Plaintiff also received counseling for demonstrating rude behavior during training and vocally challenging or disparaging the Bank's policies, decisions, and management. (Anderson Dec. ¶ 17, Ex. 9).

### 2. Training

Between 1998 and 2000, Barron received over 38 hours of "in house" and "outsourced" training (Anderson Dec. ¶ 20; Barron Dep. 64), although the bulk of the training occurred after he filed his 1998 EEOC charge of discrimination. (Doc. # 16, Ex. 26). Barron's training courses included courses in the following areas:  management; self defense; writing; customer service; and career development. (*Id.*). Plaintiff's supervisors have testified that they encouraged him to take advantage of other training opportunities (Anderson Dec. ¶ 20, Ex. 10; Barron Dep. 256-58, 260; Blass Dec. ¶ 3-8), although Plaintiff does not recall "formally" requesting any training. (Barron Dep. 148, 154).

### C. Plaintiff's Allegations

On June 26, 1998, Plaintiff filed a Charge of Discrimination with the EEOC. (Doc. # 16, Ex. 4). In his EEOC charge, Plaintiff alleged that Defendant had discriminated against him with regard to "disciplinary actions, performance ratings, job assignments, training, promotions, compensation, and other terms, conditions, and privileges of employment." (*Id.*). He also alleged that Defendant "engaged in a pattern and practice of maintaining racially discriminatory employment practices designed to hire and promote white individuals and to deny African-Americans promotions, regardless of their qualifications" and that those practices have disproportionately affected African American employees. (*Id.*).

Plaintiff filed an Amended Charge on August 24, 1998, alleging discrimination on the basis of race in various terms and conditions of employment. (Doc. # 16, Ex. 5). His amended EEOC charge set forth one specific challenged promotion decision -- the May 1998 selection of a "less-qualified white applicant" to Supervisor in "Payer Bank Services." (*Id.*).

On September 6, 2000, the EEOC issued a Determination on Plaintiff's charge, finding "reasonable cause to believe that the [Defendant] discriminated against [Plaintiff] with regard to job assignments, training, performance ratings, promotions and compensation because of race," while determining there was no reasonable cause to believe Defendant discriminated against Plaintiff with respect to disciplinary matters. (Doc. # 16, Ex. 15).

Plaintiff's lawsuit followed on January 17, 2002.  (Complaint).  Plaintiff and six other employees of Defendant initially filed one lawsuit alleging Defendant had discriminated against them on the basis of race.  Those lawsuits were eventually severed into individual cases, including this one. The complaint allegations pertaining to Plaintiff are similar to those for the other six original plaintiffs, including allegations of discrimination in promotions, performance ratings, training, and compensation. (Complaint ¶ 29-36).

### III.   Applicable Substantive Law and Discussion

As a threshold matter, the court notes that Plaintiff has abandoned a number of claims in his opposition brief that were initially alleged in his complaint, including: (1) the February 16, 2000 selection of Monica Terry to fill the position of Payor Bank Services Supervisor;[8] (2) the May 1998

---

[8] In any event, this claim fails because Plaintiff cannot establish a prima facie case of disparate treatment on the basis of race. The selectee, Monica Terry, is African-American.

Payor Bank Services Supervisor position;[9] (3) the April 1, 1999 selection of Tom Brasfield to Check Collection Supervisor in the Check Collection Department (a/k/a "Payment Services");[10] and (4) disparate treatment pay claims.[11]   Additionally, although Plaintiff's complaint alleges a disparate treatment claim based on the Bank's "discriminatory rating practices" and "several diminished, underrated or underscored evaluations" (Complaint ¶ 34), Plaintiff's brief in opposition to summary judgment morphs together his disparate treatment claims based on performance evaluations and his disparate impact claims.[12]   The court will not consider these abandoned claims on summary judgment.

_____

[9] In any event, this claim fails because the selection occurred *after* Barron filed his EEOC charges in 1998 and the charge was never amended to add this claim.  Moreover, Barron admits that he does not know whether he applied or who received the position, much less the race of any applicant or incumbent.  (Barron Dep. 196).  The undisputed record evidence shows that no individual was promoted to or otherwise selected as Payor Bank Services Supervisor in May 1998, or at any other time within the 180 days prior to Barron's charge.

[10] In any event, this claim fails because the selection occurred *after* Barron filed his EEOC charges in 1998 and the charge was never amended to add this claim.  Regardless, there is no evidence that the Bank's articulated reason for selecting Brasfield - because of his previous outstanding performance in the department and because he was believed to be the most qualified person for the job (Anderson Dec. ¶ 21) - is a pretext for race discrimination.

[11] Barron admits that his complaint about his compensation dates to his time at the Bank prior to his move to the Protection Department.  (Barron Dep. 215).  Moreover, Barron testified that he "[does] not know for a fact" that he was paid less than similarly situated White employees, but testified instead that his complaint about his compensation is that he is paid less than Grade 28 *Lieutenants.*  (Barron Dep. 160, 215)  Barron was not a Grade 28 Lieutenant, but instead was a Grade 26 Sergeant; therefore, he was ineligible to receive a Lieutenant's salary.  Barron admits that he does not know of any employee "doing the same job . . . with the same performance rating [and] . . . receiving more money than [he]."  (Barron Dep. 162).  The undisputed record evidence shows that Barron was consistently paid within, *or above*, his salary range throughout his employment with the Bank.  (Anderson Dec. ¶ 19).  In fact, Barron acknowledges that he was paid more than the other Sergeants.  (Id.; Barron Dep. 147).

[12] In a separate section of his opposition brief titled, **"The Defendant Is Not Entitled To Summary Judgment On Barron's Performance Review Claim,"** Plaintiff argues:

> The policy used by the Bank to evaluate the performance of its employees has a disparate impact on African American employees. (Ex. A, Collins Decl. Ex. 1). The promotional decisions at issue in this case are defended by the Bank, in part, because

The only claims addressed by Plaintiff's opposition to summary judgment, and therefore the only claims left in this case, are: (1) disparate impact/ pattern and practice related to evaluations and promotions; (2) disparate treatment in promotion based on the February 1998 promotion of Ashley Patrick to Grade 27 Financial Services Analyst; the May 1998 promotion of Paul Jadwin to Supervisor in Check Collections; the December 1999 promotion of Tommy Baswell to Lieutenant; and the 1999 selections of Blake Andrus and Jeremy Whitley for Grade 28 Check Collection Supervisor positions; and (3) disparate treatment based on the alleged denial of training opportunities.

### A.    § 1981 claims

The court finds that all of Plaintiff's § 1981 claims are due to be dismissed.  Plaintiff's disparate impact/pattern and practice claims under § 1981 are due to be dismissed because the case law is well settled that Plaintiff cannot proceed with a disparate impact claim under § 1981.  *See General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 388 (1982); *Ferrill v. The Parker Group, Inc.,* 168 F.3d 468 (11th Cir. 1999).

With respect to Plaintiff's disparate treatment claims, the substantive analysis under the statutes is the same. *Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (holding that Title VII and § 1981 have the same requirements of proof and use the same analytical framework). However, the statute of limitations periods differ under Title VII and § 1981, and for this reason, Plaintiff's § 1981 claims are time-barred.

---

some of the white employees to whom Barron compares himself received ratings of "outstanding" on their performance evaluations. (Def. Ex. D, Anderson Decl.)

(Doc. # 35, at 27).  To the extent that any separate disparate treatment claims based on his performance ratings are still in the case, they are clearly time-barred because Plaintiff admitted at his deposition that his evaluation claims date back to 1995 and clearly predate the applicable limitations periods.  (Barron Dep. 210, 312).

All of Plaintiff's § 1981 *promotion* claims fall outside the limitations period. Defendant argues that a two-year statute of limitations period applies to Plaintiff's promotion claims under § 1981. (Doc. # 35). Although the parties' summary judgment briefs in this case were submitted prior to the Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 124 S.Ct. 1836 (2004), which set forth guidelines for determining the appropriate statute of limitations under § 1981, *Jones* does not change the parties' statute of limitations analysis as it relates to Plaintiff's promotion claims. Under *Jones*, two years is the appropriate limitations period for promotion claims. *Jones*, 124 S.Ct. at 1846 (applying a two-year limitations period to causes of action that constituted a violation under the pre-1990 version of § 1981 and *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989)). Plaintiff filed his complaint on January 17, 2002 and because all of Plaintiff's promotion claims in this case occurred prior to January 17, 2000, any claims based on § 1981 are barred by the two-year statute of limitations.[13]

With respect to Plaintiff's disparate treatment claims relating to training opportunities, the appropriate statute of limitations under *Jones* is the four-year statute of limitations found in 28 U.S.C. § 1658(a), because claims based on performance evaluations and denial of training opportunities "'arose under' the 1991 Act in the sense that they were made possible by that Act." *Jones*, 124 S.Ct. at 1846. Thus, Plaintiff's training claims are timely only if they occurred within the four year period from January 17, 1998 until the filing of Plaintiff's complaint on January 17, 2002. As described in more detail in Section III. D, *infra*, Plaintiff's two claims based on denied training occurred on or about 1995 and on or about December 2002, both well outside the limitations period. Accordingly, summary judgment also is appropriate as to all of Plaintiff's disparate treatment claims under § 1981.

---

[13] In fact, Plaintiff abandoned the only claim that fell within the limitation period -- the February 16, 2000 Payor Bank Services Supervisor claim.

Plaintiff's claims thus proceed only under Title VII. The court will first address Plaintiff's Title VII disparate impact claims and thereafter will separately address each Title VII disparate treatment claim.

**B.**     **Disparate Impact/ Pattern and Practice Claims**

Plaintiff claims that the Bank's pattern and practice of using subjective performance ratings as a basis for promotional selection disparately impacts African American employees. Plaintiff points out that the evaluation system used by the Bank is almost totally subjective and the raters are disproportionately white. (Williams Decl., Ex. 11).

The disparate impact "theory prohibits *neutral* employment practices which while non-discriminatory on their face, visit an adverse, disproportionate impact on a statutorily protected group." *E.E.O.C. v. Joe's Stone Crab, Inc.,* 220 F.3d 1263, 1274 (11th Cir. 2000). "The doctrine seeks the removal of employment obstacles, not required by business necessity, which create 'built-in headwinds' and freeze out protected groups from job opportunities and advancement." *Id.* (quoting *Griffin v. Carlin,* 755 F.2d 1516, 1524(11th Cir. 1985)(quoting *Griggs v. Duke Power Co.,* 401 U.S. 424, 431-32(1971)).[14]

**1.**     **Plaintiff's Burden to Establish a Prima Facie Case of Disparate Impact.**

"A disparate impact claim requires the identification of a specific, facially neutral, employment practice causally responsible for an identified statistical disparity." *Joe's Stone Crab,* 220 F.3d at 1274. Thus, a plaintiff seeking to prove discrimination through the disparate impact theory must establish three elements: "*first,* that there is a significant statistical disparity between the proportion of [African-

---

[14] Similarly, the purpose of pattern or practice proof is to show that discrimination is part of the employers "standard operating procedure." *Joe's Stone Crab,* 220 F.3d at 1274 ("In a pattern or practice case, the plaintiff must prove, normally through a combination of statistics and anecdotes, that discrimination is the company's standard operating procedure.").

Americans] in the available labor pool and the proportion of [African- Americans receiving an "Outstanding" performance rating]; *second*, that there is a specific, facially-neutral, employment practice which is the alleged cause of the disparity; and *finally* ... that a causal nexus exists between the specific employment practice identified and the statistical disparity shown." *Joe's Stone Crab,* 220 F.3d at 1274. Plaintiff "must offer statistical evidence of a kind and degree sufficient to show that *the practice in question* has *caused* the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Joe's Stone Crab*, 220 F.3d at 1274-75 (emphasis in original).

"Once each of these three elements are shown, a plaintiff has established a prima facie case of disparate impact discrimination. The burden of production then shifts to the defendant to establish that the challenged employment practice serves a legitimate, non-discriminatory business objective. However, even if the defendant satisfies this burden, a plaintiff may still prevail by proving that an alternative, non-discriminatory practice would have served the defendant's stated objective equally as well." *Id.* at 1275. (citations omitted). The burden for plaintiffs alleging disparate impact is high as illustrated by the following observation made by the Eleventh Circuit in 2000: "we are aware of no case [since 1971] in which a facially-neutral discriminatory practice has been challenged successfully under a disparate impact theory." *Joe's Stone Crab*, 220 F.3d at 1278.

### 2.   Plaintiff Has Not Established a Prima Facie Case of Disparate Impact.

In support of his claim, Plaintiff presents the following evidence: (1) "statistical" analysis of an EEO-1 report and a listing of 15 employees in 1998 who received an "Outstanding" performance evaluation allegedly demonstrating that only three and a half percent of black employees (4 out of 113) received an Outstanding rating while nine percent of white employees (11 out of 122) received that rating, (Ex. 21; Collins Decl., Ex. 1); and (2) anecdotal evidence in the form of declarations from other Bank employees and a December 1993 Staff Report of the Committee on Banking, Finance and Urban

14

Affairs, 103rd Cong., titled "Status of Equal Employment Opportunity At The Federal Reserve: Diversity Still Lacking." (Doc. # 16). After examining the evidence presented, the court finds that Plaintiff has failed to establish a prima facie case both because he has not shown that he was adversely affected by any *neutral* employment practice and because he has not shown that a facially neutral employment practice was causally connected to any statistical disparity in this case.

First, Plaintiff's claim fails because he has not pointed to a neutral employment practice that adversely affects black employees. Plaintiff's assertion that discretionary performance evaluations caused an adverse effect is really not suited to a disparate impact analysis. In essence, Plaintiff's complaint is that the Bank granted discretion to supervisors in rating employees and that those supervisors exercised discretion to intentionally discriminate against Plaintiff and others. That is, Bank supervisors allegedly employed a *purposeful* discriminatory policy in not ranking him and other black employees as "Outstanding," *not* a *neutral* one that happened to result in discrimination once applied. Plaintiff cannot assert such a claim under a disparate impact theory because he simply has not identified a particular neutral employment practice that inadvertently causes such an impact. *See* 42 U.S.C. § 2000e-2(k). At best, Plaintiff has suggested that a supervisor has *intentionally* applied a neutral practice to discriminate. That intentional act of a supervisor with discretion is not a particular employment practice capable of evaluation for impact.[15]

---

[15] Plaintiff also claims that the mere usage of subjective performance evaluations as a basis for promotional selections results in a disparate impact. (Doc. # 35, at 1-2). The argument is plainly in error. The Eleventh Circuit has made clear that a subjective basis for the challenged employment action can be legally sufficient if the defendant articulates a clear factual basis for the opinion. *Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000) (*en banc*). Although *Chapman* was a disparate treatment case, the analysis applies to an impact claim to the extent it suggests that the mere use of subjective reasons for a decision, without more, cannot uniformly cause a discriminatory impact.

Second, Plaintiff's purported evidence does not meet the Eleventh Circuit burden to show "a combination of *strong* statistical evidence of disparate impact coupled with anecdotal evidence of the employer's intent to treat the protected class unequally." *Joe's Stone Crab*, 220 F. 3d at 1287. Even assuming that the proffered evidence is admissible, Plaintiff's "statistical evidence" is wholly lacking. It consists solely of a listing of 15 employees during a less-than-one-year period who received "Outstanding" ratings. (Doc. # 16, Ex. 1). Those bare numbers lack control for factors such as work performance and other non-race considerations which may have influenced the performance ratings -- "variables which would undermine the reasonableness of the inference of discrimination." *Swint v. Pullman-Standard*, 539 F.2d 77, 97 (5th Cir. 1976). Without an analytical foundation for the raw numbers, they are "virtually meaningless." *Evans v. McClain, Inc.*, 131 F.3d 957, 963 (11th Cir. 1997) (internal quotations omitted). Moreover, the court has found no evidence in the record to establish a correlation between an "outstanding" rating and selection for a promotion. *See Brown v. American Honda Co.*, 939 F.2d 946, 952-53 (11th Cir. 1991) (holding that plaintiff's statistical evidence, which lacked information about whether black employees had even applied for supervisory positions was insufficient as a matter of law).

Moreover, Plaintiff's "anecdotal evidence" of a pattern and practice of discrimination consists of declarations from some of his former co-plaintiffs, many of whom have already had their claims dismissed by other judges on this court, and a portion of a *decade-old* report of Congressional staffers, disclaimed by the committee for whom they worked, relating to pre-1993 diversity across the Federal Reserve System. This so-called anecdotal evidence cannot compensate for Plaintiff's failure to proffer "*strong* statistical evidence of disparate impact" as required by the Eleventh Circuit. Summary judgment is due to be granted on these claims.

16

### C.   Disparate Treatment in Promotions

In order to establish a prima facie case of racial disparate treatment in promotions, Plaintiff must show: (1) he is a member of a protected class; (2) he was qualified and applied for a promotion; (3) he was rejected despite his qualifications; and (4) other equally or less qualified employees who are not members of the protected class were promoted. *E.g., Taylor v. Runyon*, 175 F.3d 861, 866 (11th Cir. 1999). When there is no formal posting of a job's availability, a plaintiff is not required to show that he applied for the promotion, but nonetheless must establish "that the company had some reason or duty to consider him for the post" in order to make out a *prima facie* case. *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984). *Carmichael*'s progeny clarifies that a plaintiff must show that "[the employer] was on notice that he 'might reasonably be interested [in the position].'" *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1560 (11th Cir. 1986). In this case, Plaintiff has not offered direct evidence of race discrimination in promotions (Barron Dep. 172, 181), but rather relies on both circumstantial and statistical evidence to support these claims.[16]

### 1.   February 1998 promotion of Ashley Patrick to Grade 27 Financial Services Analyst[17]

---

[16] The court will not address separately the statistical evidence offered in support of Plaintiff's disparate treatment claims because it is the same evidence previously offered in support of his disparate impact/pattern and practice claims. Suffice it to say that, for the same reasons outlined by the court before, the statistical evidence offered by Plaintiff is wholly insufficient to support an inference of discrimination with regard to his disparate treatment claims. *See Forehand v. Florida State Hosp.*, 89 F.3d 1562, 1575 (11th Cir. 1996) (holding that "in a disparate treatment case, the statistical evidence must be finely tuned").

[17] It is unclear from Plaintiff's brief whether he also claims that he should have been promoted to the Grade 26 Payment Services Quality Control Specialist awarded to Ashley Patrick in July 1997. (*See* Docs. # 35; 16, Barron Decl. ¶ 42). Plaintiff asserts that "[t]he position was not posted and Barron had no opportunity to apply." (Doc. # 35). Even assuming this claim is in the case, it is clearly time-barred. Title VII requires that an employee file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice. 42 U.S.C. § 2002e-5; *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Therefore, a July 1997

In February 1998, the Bank promoted Ashley Patrick from a Grade 26 job to the Grade 27 position of Financial Services Operations Analyst. Plaintiff claims that he should have received this position but did not due to his race.

Defendant argues that Plaintiff has failed to meet his prima facie burden because (1) Patrick received a career progression promotion and there was no vacant position; (2) even assuming a vacancy existed, Plaintiff was not qualified for the position; and (3) regardless, the Bank had no duty to consider him for the post because the Bank was not on notice that Plaintiff "might reasonably be interested" in the position. *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1560 (11th Cir. 1986).

The court agrees that, in more than one respect, Plaintiff has failed to establish a prima facie case. First, the undisputed evidence indicates that Patrick's promotion was part of her career progression and thus no position was vacant or available to other employees. Only Patrick was considered for a Grade 27 promotion and it was given to her on recognition that she already was performing at a higher level in terms of expertise, knowledge and analytical ability. (Anderson Dec. ¶ 23). As the Eleventh Circuit has noted, "[a]n employee may progress to a higher level job by promotion or reclassification. A promotion occurs when an established vacancy is filled with an internal candidate. A reclassification occurs when an employee classified at one level is moved to a higher level because he is already performing the duties and responsibilities of the higher level." *Eastland v. Tennessee Valley Authority*, 704 F.2d 613, 617, n.6 (11th Cir. 1983). The undisputed evidence is that Patrick's progression was due to a reclassification as opposed to a promotion.

---

promotion claim and any other Title VII claims arising before December 28, 1997 - 180 days prior to the June 28, 1998 filing of Plaintiff's first EEOC charge - are barred by Plaintiff's failure to file a timely EEOC charge.

Second, even assuming there was a vacant position to which Plaintiff could have been promoted, Plaintiff has not produced any evidence that he was qualified for the position or that the Bank "had a reason or duty to consider him for the position." *Carmichael*, 738 F.2d at1133.  By February 1998, when Patrick was promoted to an operations position, Plaintiff had been in Protection and out of Operations for several years. (Anderson Dec. ¶ 13, Ex. 6; Barron Dep. 139-43, 146, 225-26, Exs. 4-6).[18]   In fact, Plaintiff had earned two consecutive "Below Requirements" ratings that contributed to his demotion from a supervisory operations position in Cash Services.  (Anderson Dec. ¶ 13; Barron Dep. 225-26).  The court finds there is no evidence in the record to demonstrate that Plaintiff was qualified for this position or that the Bank even had reason to know Plaintiff might reasonably be interested in an operations job -- an area in which he had never excelled and in fact had voluntarily left.

Plaintiff's inability to meet his prima facie burden is fatal to his claim and summary judgment is proper for this reason alone.  Accordingly, the court need not even address Plaintiff's purported evidence of pretext. *Knight v. Baptist Hospital of Miami, Inc.,* 330 F.3d 1313 (11th Cir. 2003).

### 2.    May 1998 promotion of Paul Jadwin to Supervisor in Check Collections

Plaintiff also complains that Paul Jadwin's selection as an external applicant to fill a Grade 28 Check Collection Supervisor in May 1998 was racially discriminatory.  In April 1998, the Bank sought a Grade 28 "Accounting Supervisor" with management and supervisory skills and experience. (Anderson Dec. ¶¶ 24, 25).  Although three internal employees - Plaintiff and two white employees - applied for the position after it was posted, all three were rejected because they lacked the leadership skills sought by the Bank. (Anderson Dec. ¶ 24).  When no qualified internal candidates were

---

[18] Barron sought the move, by his own description, because Protection was better suited to his skill set than Operations.  (Barron Dep. 139-42, 146, Ex.6).

identified, the position was renamed "Check Collection Supervisor" and Jadwin, an external candidate, was hired. (*Id.*). The Bank has articulated the following reasons for Jadwin's selection: he possessed a college degree in business administration; he had taken several courses in finance; and he had several years of successful supervisory and managerial experience in the private sector as a Financial Representative, Assistant Branch Manager, and eventually Branch Manager of American General Finance. (*Id.*)

In response to Defendants' articulated reasons, Plaintiff argues only that the Bank cannot now compare his qualifications to Jadwin's because at the time the decision was made, the Bank only considered Plaintiff for the Accounting Supervisor position, not the Check Collection Supervisor position into which Jadwin was hired. (Doc. # 35). Plaintiff's argument misses the mark. It assumes that *two* different positions were available, even though there is no evidence in the record to suggest that the change from "Accounting Supervisor" to "Check Collection Supervisor" was anything but a re-titling of the same position. (*See* Anderson Dec. ¶ 24).

Viewing the facts in the light most favorable to Plaintiff, the court finds that Plaintiff was considered for the position for which Jadwin was hired and that there are facts from which a reasonable employer could determine that Plaintiff lacked the experience and performance to perform that position. When Plaintiff applied for the position, the Bank was aware of Plaintiff's substantial difficulty as a supervisor, including receiving two "Below Requirements" ratings and eventually leaving that supervisory role; when Jadwin was hired, the Bank knew that he had several years of successful supervisory and managerial experience in the private sector. Accordingly, the Bank determined that Jadwin was more qualified than Plaintiff (and the other internal applicants) for the position. The court must evaluate all of the summary judgment evidence with respect to the continuum of the Bank's decisional process. Plaintiff has not demonstrated that his qualifications

20

were so superior to Jadwin's "that no reasonable person, in the exercise of impartial judgment, could

have chosen the candidate selected over the plaintiff for the job in question." *Lee v. GTE Fla., Inc.,*

226 F.3d 1229, 1254 (11th Cir. 2000). Any disparities in qualifications in this case are not "so

apparent as virtually to jump off the page and slap you in the face." *GTE Florida, Inc.*, 226 F.3d

at1253.  The court finds no evidence in the record to suggest that Defendant's decision to hire a

qualified external candidate - after determining there were no qualified internal candidates of any race

- is a pretext for race discrimination.

### 3.    1999 promotions

Plaintiff also claims that he should have received the Lieutenant position awarded to Tommy

Baswell in December 1999 and the Grade 28 Check Collection Supervisor positions awarded to Blake

Andrus and Jeremy Whitley in March and May 1999.  The Defendant argues that Plaintiff's 1999

promotion claims are barred as untimely under Title VII because they occurred after the 1998 filing

of Plaintiff's EEOC charges, which were never amended to include this claim. The court agrees. The

Supreme Court of the United States has made clear that "*[e]ach* discrete discriminatory act starts a

new clock for filing charges alleging that act.  The charge, therefore, must be filed within the [180

day] time period after the discrete discriminatory act occurred." *National Railroad Passenger Corp.

v. Morgan*, 536 U.S. 101, 122 (2002) (emphasis supplied).  "Discrete acts such as . . . failure to

promote . . . are easy to identify.  Each incident . . . constitutes a separate actionable 'unlawful

employment practice.'" *Morgan*, 536 U.S. at 114.[19]

---

[19] The court is not persuaded by Plaintiff's argument that *Morgan* is not applicable because
Plaintiff has alleged a "pattern and practice" of discrimination. First, for the reasons outlined earlier
in this opinion, summary judgment is appropriate on the "pattern and practice" claims because they
are not legally sufficient. Moreover, Plaintiff's reliance on *Sanchez v. Standard Brands, Inc.,* 431
F.2d 455, 466 (5th Cir.1970), for the proposition that "pattern and practice" allegations exempt
Plaintiff from the requirement to refile with the EEOC after each subsequent promotion denial is

In this case Plaintiff amended his June 1998 charge once in August of that same year, adding only one specific promotion claim -- the May 1998 selection of a "less-qualified white applicant . . . in Payer Bank Services." (Doc. # 16, Ex. 5). Plaintiff failed to amend his charge again to include any other promotions that occurred post-August 1998 and therefore summary judgment is appropriate on these 1999 claims for this reason alone.

Moreover, and in any event, the court finds that summary judgment is appropriate on the merits of each of these claims. First, with respect to the Lieutenant position, the Bank has stated it selected Baswell rather than Plaintiff because of his outstanding job performance and because the Bank determined that he was the best candidate for the job. (Anderson Dec. ¶ 22). Although Plaintiff argues that his qualifications were superior to Baswell's, the court finds no evidence of pretext because any disparities in qualifications are not "so apparent as virtually to jump off the page and slap you in the face." *GTE Florida, Inc.*, 226 F.3d at1253. The undisputed facts demonstrate that Baswell had an exemplary 12-year history in Protection, having successfully performed as a Security Guard I, Security Guard II, Corporal and Sergeant. (Anderson Dec. ¶ 22). Members of the Personnel Committee and Protection management interviewed both Plaintiff and Baswell for the Lieutenant position, and each interviewer rated Baswell more favorably than Plaintiff. (Blass Dec. ¶ 9, Ex. 3). Plaintiff points to his impressive military background and 18 years of combined experience in budgeting, training, law enforcement, physical security, personnel management and computer training as evidence of his superior qualifications. (Barron Decl. ¶ 33; Doc. # 35). Although the Plaintiff's record is commendable, the court nonetheless finds that the evidence is insufficient to constitute a

---

misplaced. (Doc. # 35, n. 9). As Defendant points out, "*Sanchez* created no such creature as the 'forever charge,' and did not hold that 'pattern-or-practice' means 'continuing violation,' as Barron apparently would have a casual reader believe. " (Doc. # 34).

"slap you in the face" scenario. Accordingly, summary judgment is appropriate both procedurally and on the merits of Plaintiff's Lieutenant promotion claim.

Plaintiff's 1999 Grade 28 Check Collection Supervisor position claims also fail on their merits. The Bank has articulated that Whitley and Andrus, both external candidates, were selected for the Check Collection Supervisor positions because of their qualifications. Whitley had demonstrated successful managerial skills by performing as a Branch Manager at two different branches of American General Finance. (Anderson Dec. ¶ 26) Andrus had over 13 year of successful management experience, serving not only as a Branch Manager at American General Finance, but also as a manager for Marc Steel Company. (Anderson Dec. ¶ 27). By contrast, Plaintiff had been rejected for the Check Collection Supervisor position a year prior to these decisions, in large part because of his lack of successful supervisory experience and his two "Below Requirements" performance reviews. (Anderson Dec. ¶ 24).

Plaintiff claims that these positions were not posted and that there is  no evidence that any decision-maker actually considered Plaintiff or compared the differences in qualifications of Plaintiff and the successful candidates. (Doc. # 35). To the contrary, Branch Manager Anderson's Declaration explains that, with respect to both positions, "[b]ecause of the lack of qualified persons within the Bank to fill this supervisory position, [the jobs were] not posted . . . [Plaintiff] did not have the qualifications for the position and had previously demonstrated his inability to serve in this capacity." (Anderson Dec. ¶ 27).  The undisputed evidence indicates that the Bank was familiar with Plaintiff's (and others') qualifications for this position because he had applied to the same position less than a year before and the Bank had already determined that Plaintiff was not qualified for this position. Once again, Plaintiff fails to show that "that no reasonable person, in the exercise of impartial

judgment, could have chosen the candidate selected over the plaintiff for the job in question." *GTE Fla., Inc.,* 226 F.3d at 1254.

Accordingly, for all of the reasons outlined above the court finds that summary judgment is due to be granted on all of Plaintiff's remaining disparate treatment promotion claims.

###    D.    Disparate Treatment in Training

Although Plaintiff's complaint generally alleges that he was denied unspecified training opportunities provided to white employees (Complaint, ¶ 35), Plaintiff admitted at his deposition that most of those alleged denials occurred prior to 1995. (Barron Dep. 134-38, 149).[20]   Plaintiff's opposition to summary judgment identifies only two specific instances when white employees - Tommy Baswell and John Young - allegedly received training that he did not.[21]   Both of these claims are time-barred.

With respect to Baswell's training, Plaintiff testified that "when [someone from management personnel] found out [Plaintiff] was coming to the protection department he accelerated the promotional opportunities for Tommy Baswell, and he preempted giving more." (Barron Dep. 136-137).   It is undisputed that Plaintiff transferred to Protection in **September 1995** (Anderson Dec.

---

[20] Specifically, Barron testified that he was denied training opportunities offered to Ellis, Bowman, Strength, and Pewthers in the "late 80's and early 90's," as well as computer courses provided to Baswell that were "already underway" when Barron transferred to the Protection Department in 1995. (Barron Dep. 134-38). Even then, Barron testified that he "can only speculate" whether the alleged denial of training in fact occurred. (Barron Dep. 136, 138).

[21] Although Plaintiff's deposition testimony recalls other employees who received training when Plaintiff did not (Barron Dep. 150-55), his brief in opposition to summary judgment failed to address those instances and they are deemed abandoned. Additionally, Plaintiff's brief contains numerous generic references to "computer and management training" and other allegedly denied training opportunities without providing any time frame or identifying any similarly situated white employee who was treated more favorably. Plaintiff falls far short of establishing a prima facie case on these "claims" and the court lacks sufficient identifying details to undertake an analysis of them.

¶ 13, Ex. 6; Barron Dep. 139-43, Exs. 4-6), well outside of the applicable 180-day limitations period for his **June 1998** EEOC charge.

Likewise, Plaintiff's claim regarding training provided to John Young is barred because it occurred on the other side of the limitations period. At Plaintiff's December 3, 2002 deposition, he claimed that he was denied "range master training [] given to an individual, John Young." (Barron Dep. 155). Plaintiff admitted, however, "it just occurred . . . . As a matter of fact, he just finished that training." (*Id.*). This claim is untimely under Title VII because it occurred sometime in 2002, well *after* the 1998 filing of Plaintiff's EEOC charges which were never amended to include this claim. *Morgan*, 536 U.S. at 122. Accordingly, summary judgment is appropriate because both of these claims "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 S. Ct at 113.[22]

## IV.     Conclusion

For the reasons stated above, Defendant's motion for summary judgment is due to be granted. The court finds that no genuine issues of material fact remain for trial as to Plaintiff's claims and that Defendant is entitled to judgment as a matter of law. The court also finds that the motions to strike are due to be denied. A separate Final Judgment will be entered.

**DONE** and **ORDERED** this      10th      day of August, 2004.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[22] Not only has Plaintiff failed to identify instance of denied training within the applicable statute of limitations, but the undisputed evidence demonstrates that despite encouragement from Plaintiff's supervisors - both on performance appraisals and in personal meetings - to take advantage of other training opportunities (Anderson Dec. ¶ 20, Ex. 10; Barron Dep. 256-58, 260; Blass Dec. ¶ 3-8), Plaintiff never "formally" requested any training. (Barron Dep. 148, 154). Indeed and ironically, a March 1999 memorandum to Plaintiff from the Personnel Committee, cautioned "[t]here have been occasions where you have been rude in training classes, and vocally challenged or made disparaging remarks about Bank policy, Bank decisions, and Bank management." (Anderson Dec. Ex. 10).